**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **SKYLER TARQUIN SMITH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **CASE NO.  5:11-CV-8036-SLB** |
| **vs.** | ) | **CRIM. CASE NO. 5:10-CR-0046-SLB-SGC** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**<u>MEMORANDUM OPINION</u>**

This case is before the court on petitioner Skyler Tarquin Smith's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [hereinafter Motion to Vacate].  (Doc. 1.)[1]  Smith was charged in a seven-count Indictment with (1) wire fraud in violation of  18 U.S.C. § 1343; (2) falsely claiming to be a service disabled veteran for purposes of bidding on a government contract in violation of 18 U.S.C. § 1001; (3) falsely claiming in writing to have received a Purple Heart Medal in violation of 18 U.S.C. § 704(b); (4) falsely claiming in writing to have received a Bronze Star in violation of 18 U.S.C. § 704(b); (5) wearing a Combat Infantry Badge without authorization in violation of 18 U.S.C. § 704(a); (6) wearing a Senior Parachutist Badge without authorization in violation of 18 U.S.C. § 704(a); and (7) wearing an Air Assault Badge without

---

[1] Citations to the record concerning Smith's § 2255 motion appear as "(Doc. __)." Citations to the record in the criminal proceedings against Smith, Case No. 5:10-CR-0046-SLB-SGC, appear as "(Crim. Doc. __)."

authorization in violation of 18 U.S.C. § 704(a).  (*See generally* Crim. Doc. 1.)  Smith

pleaded guilty to all counts.  (Crim. Doc. 28 at 1.)

Smith filed this Motion to Vacate pursuant to 28 U.S.C. § 2255, asking the court for

relief from a 24-month sentence[2] that the court had imposed after Smith entered a guilty plea.

(Doc. 1; Crim. Doc. 28.)  Upon consideration of the record, the submissions of the parties,

and the relevant law, the court is of the opinion that Smith's Motion to Vacate, (doc. 1), is

due to be granted in part and denied in part.

## A.  COUNTS THREE THROUGH SEVEN – *UNITED STATES v. ALVAREZ*

After Smith filed his Motion to Vacate, the Supreme Court decided *United States v.*

*Alvarez*, 132 S. Ct.. 2537 (2012).  In *Alvarez*, a plurality of the Supreme Court found the

Stolen Valor Act, 18 U.S.C. § 704(b), was an unconstitutional infringement on speech

protected by the First Amendment.  *Id*. at 2551.

The Government now concedes that Smith's convictions for Count Three, falsely

claiming to have been awarded a Purple Heart Medal, and Count Seven, falsely claiming to

have been awarded a Bronze Star Medal, for violations of § 704(b) are due to be vacated in

light of *Alvarez*.  Therefore, the court will grant Smith's Motion to Vacate and vacate his

conviction on these two counts.

---

[2]Smith was sentenced to 24 months as to Counts 1 and 2, sentences to run
concurrently; 12 months as to Count 3; 6 months as to Counts 4-6; and 6 months as to Count
7, with all custodial sentences to be served concurrently.  (Crim. Doc. 28.)  He was also
sentenced to supervised release for a term of 36 months.  (*Id*.)  His term of supervised release
was terminated on March 9, 2015.  (Crim. Doc. 32.)

Smith also argues that *Alvarez* compels that his convictions on Counts Four through Six, convictions based on his wearing service badges, should also be vacated. Counts Four through Six of the Indictment charged Smith with knowingly wearing Armed Forces badges without authorization in violation of 18 U.S.C. § 704(a). (Crim. Doc. 1 at 6 [Count Four: Combat Infantry Badge], 7 [Count Five: Senior Parachutist Badge; Count Six: Air Assault Badge].)  Smith does not distinguish between Counts Three and Seven, alleging violations of 18 U.S.C. § 704(b) that the Supreme Court found unconstitutional in *Alvarez*, and Counts Four through Six, alleging violations of § 704(a) that the plurality opinion does not address; however, he appears to be challenging only Counts Three and Seven based on his claims and not Counts Four through Six based on his wearing of service badges.

Smith contends, "Although the Movant may, or may not have, at one point, ***verbally*** claimed to have been awarded one or more medals or decorations for which he was not authorized, it is attested that the Statute under which the Movant is charged is Unconstitutional as a content-based restriction on First Amendment Free Speech." (Doc. 1 at 5 [emphasis added].)  Also, he alleges:

> [I]t should be obvious to this Honorable Court that Movant was criminally prosecuted under a previously ruled, Unconstitutional Act, as it pertains to Freedom of Speech, in this case, Movant"s supposed ***verbal claims*** to having been awarded one or more military medals or decorations for which he was not authorized.

(Doc. 1 at 6 [emphasis added].)

The Supreme Court's opinion in *Alvarez* addressed only speech made unlawful by § 704 (b); it not address the legality of § 704(a).  In his dissenting opinion, Justice Alito noted:

> Congress long ago made it a federal offense for anyone to ***wear***, manufacture, or sell certain military decorations without authorization.  See Act of Feb. 24, 1923, ch. 110, 42 Stat. 1286 (codified as amended at 18 U.S.C. § 704(a)). Although this Court has never opined on the constitutionality of that particular provision, we have said that § 702, which makes it a crime to ***wear*** a United States military uniform without authorization, is "a valid statute on its face."

*Alvarez*, 132 S. Ct. at 2558 (Alito, J., dissenting).

Because Smith challenges his convictions based on his statements and not his conduct of knowingly wearing badges he was not authorized to wear, the court finds that Smith has not alleged a ground for relief pursuant to § 2255 as to his conviction and sentence for violating § 704(a) as set forth in Count Four through Six of the Indictment.  Therefore, his Motion to Vacate will be denied as to these counts.

## B.  COUNTS ONE AND TWO

As to Counts One and Two, Smith contends that the Government withheld exculpatory evidence and that his Plea Agreement and guilty plea to these Counts were based on ineffective assistance of counsel.

The Government contends that Smith's claims are barred by his appeal/habeas waiver in his Plea Agreement and procedurally barred by his failure to exhaust his claims on direct appeal.  Although the court believes the Government is correct, it will address the obvious lack of merit of Smith's claims.

This court "applies a 'strong presumption' that statements made by a defendant during his plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Therefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.' *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir.1988)." *United States v. Borden*, 580 Fed. Appx. 870, 871 (11th Cir. 2014).[3] "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Jones v. United States*, Nos. 12-24521-CIV, 11-20767-CR; 2014 WL 4906217, *13 (S.D. Fla. Sept. 30, 2014)(quoting *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005)).

The Plea Agreement, signed by Smith as well as initialed by him on each page, provides:

> In January 2009, Mr. Lynn MORSTAD had been searching the internet (i.e. eBay) for the past year and a half for a diamond, to upgrade his wife's wedding ring, as a surprise. MORSTAD found an eBay advertisement listing for a 4.98 carat, flawless, diamond, on eBay with a selling price of $140,000. On February 21st, 2009, MORSTAD contacted the defendant Skyler Smith (SMITH), the seller, at the e-mail address provided, expressing an interest in the diamond. SMITH's advertisement indicated the diamond had an appraised value of $200K or $300K, but SMITH offered to sell the diamond for

---

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

$140,000.  MORSTAD offered $70,000, but SMITH indicated he would not accept less than $140,000 for the diamond.  Several days passed and there was no communication between the two parties.

On February 26th , 2009, SMITH contacted MORSTAD and indicated there were no other bids for the diamond, therefore, SMITH would accept MORSTAD's offer of $70,000.  SMITH provided MORSTAD with several documents to support and verify his identity and the authenticity of the diamond.  SMITH sent via e-mailed, to MORSTAD, copies of the following documents:

a)   a printout from Sotheby's [Auction] sale/purchase price of $73,000, with a date of May 15,2008;

b)   a Gemological Institute of America grading report dated 08/07/2008, (GIA report #17480046);

c)   a copy of Skyler Tarquin Smith's valid Alabama State Driver's License, expiration date 06/1612010;

d)   a NEJ Gallery Diamond Appraisal report that listed the replacement value of the 4.98 carat diamond at $350,000, with a date of October, 2008;

e)   an invoice of $70,000, dated 11/24/2009[.]

MORSTAD made an attempt to verify the above documents prior to completing the transaction with SMITH.  MORSTAD was able to verify SMITH's listed address, but MORSTAD was unable to completely verify the authenticity, appraisal value, and the original purchase price of the diamond from Sotheby's auction.  SMITH then recommended an individual by the name of "Trent", as SMITH's broker to quell MORSTAD's concerns about the diamond.

SMITH recommended to MORSTAD that he contact "Trent", to answer MORSTAD's questions and concerns.  SMITH told MORSTAD that "Trent" could verify SMITH's identity, character, the quality and authenticity of the diamond, and the condition of the stone, including the value of the stone mounted.

6

On March 4th, 2009, MORSTAD telephoned SMITH's broker, "Trent", and "Trent" assured MORSTAD that the diamond existed, and told MORSTAD he ("Trent") had flown from Arizona to Alabama to see the diamond a few months ago, and stated he ("Trent") was no longer SMITH's broker because he ("Trent") could not sell the diamond for SMITH. After MORSTAD's conversation with "Trent", MORSTAD was then convinced and followed through with the purchase of the diamond from SMITH.

SMITH was very persistent and wanted MORSTAD to complete the wire transfer of $70k first, prior to SMITH sending the diamond to MORSTAD. SMITH provided MORSTAD with his bank account information and MORSTAD wired $70,000 to SMITH's bank account at Wood Forrest Bank in Huntsville, Alabama on March 4th, 2009.

On March 5th, 2009, SMITH telephoned MORSTAD and explained, due to the high value of the diamond, FEDEX or UPS would not insure the diamond. SMITH asked MORSTAD to fly to Huntsville, Alabama to pick-up the diamond. SMITH promised MORSTAD all flight expenses incurred would be reimbursed by SMITH, upon arrival.

On March 7th, 2009, MORSTAD flew to Huntsville, Alabama. MORSTAD met SMITH and SMITH handed MORSTAD one thousand dollars in cash for his flight expenses. MORSTAD then suggested SMITH accompany him (MORSTAD) into a nearby jewelry store to get the diamond appraised quickly, but SMITH refused and stated he had to meet his girlfriend at a wedding reception. However, SMITH agreed to wait in his car until MORSTAD returned from the jewelry store. MORSTAD ran into Reed's Jewelry store located in the Bridge Street Town Centre. The jeweler told MORSTAD the 4.98 carat diamond was not real, the stone was nothing more than a Cubic Zirconia stone valued at approximately $12.90. MORSTAD ran back outside, but SMITH had already left.

On August 27th, 2009, the Army Contracting Command, Directorate of Contracting, Fort Drum, NY, released Solicitation number W91KQB92209103, on www.fedbid.com for the purchase of law enforcement gear. This was a Service-Disabled Veteran Owned Small Business set aside. The Solicitation had a closing date of September 4,2009.

On September 3rd , 2009, SMITH submitted a bid on behalf of NBC Tactical, 1452 Paramount Drive, Huntsville, AL 35806, for $168,643.80, on

this solicitation.  In the bid, NBC Tactical claims the following Business Types:  Small Business, Veteran Owned Small Business, Service Disabled Veteran Owned Small Business and Small Disadvantaged Business.  The bid submitted by NBC Tactical also states under Instructions: "Set Aside Requirement:  This solicitation is a Service Disabled Veteran Owned Small Business set-aside and only qualified Sellers can bid."

On September 17th, 2009, the defendant and NBC Tactical was awarded purchase order W911S2-09-P-0192.  Delivery was to be completed no later than October 19th , 2009.  The contract states that this is a "Notice of total Service Disabled Veteran Owned Small Business set-aside."

After failing to make the delivery date requirement, the Contracting Office made numerous requests to NBC Tactical to complete the shipment.  SMITH informed them that the equipment was sent but turned back at the gate at Fort Drum, NY, because of faulty labeling.  He then stated he could not get access to the boxes to re-label and then stated that he needed his financing company to receive the future payments for the equipment.  Smith in fact never had the ability to produce the equipment for the contract.

On December 22nd, 2009, contract W911S2-09-P-0192 was Terminated for Cause due to the non-delivery of equipment by NBC Tactical.

Investigation determined that based on SMITH's prior military service he had received an Other Than Honorable discharge.  The United States Department of Veteran's Affairs has stated they have no record of SMITH classified with any disability.

. . .

Smith was interviewed on March 2, 2010, by agents of the FBI and DCIS and admitted to the conduct as outlined in the foregoing factual basis.  Further, Smith admitted that he had never deployed overseas, had never been in combat, had not been awarded the purple heart for combat wounds, had not earned the Senior Airborne Badge, and was discharged from the United States Army, in lieu of Court Martial, for being Absent Without Leave.

(Crim. Doc. 17 at 4-10.)   At the end of this statement of facts, in bold typeface, appeared the following:

> **The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

(*Id*. at 10.)  Below this paragraph, Smith signed his name.  (*Id*.)  A change of plea hearing was held at which the above facts were read into the record.  (Crim. Doc. 30 at 25-35.)  The court instructed Smith to interrupt the recitation of the facts if the Government said "anything that [was] not true or that [Smith did] not believe the government [could] prove." (*Id*. at 24.)  Smith did not interrupt the AUSA's statement of the facts he expected to prove.  (*See id*. at 25-35.)

At the plea hearing, Smith was placed under oath.  (*Id*. at 4.)  Under oath and in open court, Smith swore to the following:

1.  The facts stated by the AUSA are "substantially correct."  (*Id*. at 35.)

2.  Other than the Plea Agreement, he was not promised anything or threatened in any way to induce him to enter a plea of guilty.  (*Id*. at 10.)

3.  He understood the maximum sentences he was facing on a plea of guilty to each Count.  (*Id*. at 10-12, 13-14.)

4.  He understood he had a right to insist on his earlier plea of not guilty.  (*Id*. at 12.)

5.  He understood he was giving up his right to a trial by jury at which he would have a presumption of innocence and the Government would have the burden to prove his guilt beyond a reasonable doubt.

6.  Also, by giving up his right to trial by jury, he was giving up his right to have the assistance of counsel at trial, the right not to incriminate himself, and the right to confront and cross-examine witnesses.  (*Id*. at 12-13.)

The court explained the charges and went through the elements of each Count.  (*Id*. at  14-23.)  Smith swore he understood the charges.  (*Id*. at 18, 19-20, 23.)  The court accepted Smith's guilty plea finding it was freely and voluntarily entered and that the requisite factual basis for the plea existed.  (*Id*. at 36.)  Smith was continued on bond pending sentencing.

However, Smith's bond was revoked prior to sentencing based on his violations of the terms of his release.  (*See* Crim. Doc. 20.)  "[T]he terms of [Smith's] release included that he not use the internet in regard to, or engage in, government contracting.  Additionally, Smith was required to submit to searches of his e-mail."  (*Id*. at 1.)  While reviewing Smith's emails the Probation Officer discovered that Smith had "sent out a resume that include[d] false claims regarding his military experience and educational advancements."  (*Id*. at 2.)  Not only was Smith continuing to misrepresent his military service, the probation officer discovered he was "involved in bidding for federal contracts."  (*Id*.)  Therefore, the court revoked Smith's bond.  (*Id*. at 3.)

At sentencing, the court considered the conditions of Smith's bond revocation as well as the contents of the presentence report to vary upward from the high end of the Guideline range of 18 months to a sentence of 24 months on Count One and Two, separately, to run

10

concurrently.  (Crim. Doc. 31 at 23, 25.)  The upward departure was based, in part, on

Smith's lying under oath at his bond revocation hearing.  (*Id*. at 17, 27.)  The court noted, on

the record, that defendant had demonstrated "compulsive untruthfulness related to this case

to the probation officer and to the court."  (*Id*. at 30.)

Nevertheless, the court notes that in his habeas petition, Smith alleges that he did not

have any fraudulent intent when he sold the fake diamond to the victim and that he made no

false claims regarding his status as a service disabled veteran.  (Doc. 1 at 6-7.)  He contends:

> [C]ontrary to the Government's assertion, Smith, on February 29, 2009,
> did **not** contact Morstad and indicate that there were **no** other bids for the
> diamond.  Smith further submits that he was not "very persistent" with
> Morstad.  Smith further objects to the Government's assertion that "Smith
> agreed to wait in his car until Morstad returned from the jewelry store."  In
> fact, Morstad had indicated to Smith that he (Morstad) was going to Grogans
> **to secure a setting for the diamond**.  **Instead, Morstad unexplainably** went
> to Reeds.  Smith specifically advised Morstad that he would wait in his car for
> five (5) minutes (though he waited for ten (10) minutes) and then left, Morstad
> having not returned and Smith being late for a wedding reception.
>
> Next, Smith submits that with respect to the law enforcement gear
> solicitation and service-disabled veteran contract at issue, the October 19,
> 2009, delivery date was changed to December 20, 2009.  Smith further asserts
> that at no time, as the Government states, did he indicate that "he needed his
> financing company to receive the future payments for the equipment." Further,
> Smith, in fact **had** provided the equipment for the contract, contrary to the
> Government's recitation on this point.
>
> At no time did Smith provide a falsified DD Form 214, in fact, Smith
> stated both DD-214's were incorrect.  And the original one could be obtained
> from the Alabama Department of Industrial Relations.

(Doc. 5 at 1-2.)  Smith contends that the "diamond" was actually real and that he is a

service–disabled veteran.  (*Id*. at 9.)

When a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (pleading guilty implicates the Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to confront one's accusers, and the Sixth Amendment right to trial by jury). Given the seriousness of the matter, the Constitution insists, among other things, that the defendant enter a guilty plea that is "voluntary" and that the defendant must make related waivers "knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970); see also *Boykin*, *supra*, at 242, 89 S. Ct. 1709.

*United States v. Ruiz*, 536 U.S. 622, 628, 122 S. Ct. 2450, 2455 (2002). "[I]n respect to a defendant's awareness of relevant circumstances, [the Constitution] does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Id*. at 630 (citations omitted).

In challenging his convictions and sentence, Smith contends that the Government "withheld vital information during the prosecution of this case." (Doc. 1 at 2.) He asks the court (1) to "recognize that there was no fraud nor any intent to commit fraud present during the . . . transaction" regarding his selling a fake diamond, and (2) to find he "made no false statements" regarding his status as a service disabled veteran. (*Id*. at 6-7.) The court assumes that Smith is alleging a *Brady v. Maryland*[4] suppression claim with regard to this "withheld" information.

---

[4]*Brady v. Maryland*, 373 U.S. 83 (1963)(prosecution failure to disclose exculpatory material evidence violates the Due Process Clause).

12

Smith's suppression claim must fail, however, because the facts allegedly withheld were within Smith's personal knowledge. The Eleventh Circuit has "held numerous times that there is no suppression, and thus no *Brady* violation, if either the defendant or his attorney knows before trial of the allegedly exculpatory information." *Felker v. Thomas*, 52 F.3d 907, 910 (11th Cir. 1995)(citing *United States v. Valera*, 845 F.2d 923, 927-28 (11th Cir. 1988); *Halliwell v. Strickland*, 747 F.2d 607, 609 (11th Cir. 1984); *United States v. Cravero*, 545 F.2d 406, 420 (5th Cir. 1976)). Certainly, Smith was aware of his own intent, whether the diamond was real, and whether he was a service disabled veteran. Therefore, the court finds no suppression or "withholding" of these facts.

The court finds Smith's statements are not credible. Moreover, the court finds that the Plea Agreement was entered into knowingly and voluntarily and that guilty plea, and the admissions made at the colloquy, were knowingly and voluntarily made and are binding on Smith.

Therefore, the court finds the Government did not "withhold" or suppress "vital information." Smith, at all times prior to negotiating his Plea Agreement and entering his guilty plea, knew of the allegedly withheld information. Therefore, his Petition will be denied on this ground.

Smith contends also that his conviction and sentence as to Counts One and Two should be vacated based on ineffective assistance of counsel. The court finds Smith has

failed to show that his counsel's performance was deficient; therefore, his Motion to Vacate on this ground will be denied.

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Smith has the burden of showing he is entitled to relief from his conviction and sentence. *Barnes v. United States*, 579 F.2d 364, 366 (5th Cir. 1978)(citing *Coon v. United States*, 441 F.2d 279 (5th Cir.), *cert. denied*, 404 U.S. 860 (1971));[5] *see also Day v. United States*, 428 F.2d 1193, 1195 (8th Cir. 1969)("The petitioner bears the burden of proof upon each ground presented for relief in a Section 2255 proceeding."). He must prove "not merely that the errors [in the proceedings] created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting [the entire proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). "[A] guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice. *Caffey v. United States*, Civil Action No. 2:09cv151–WHA, 2012 WL 960912, *4 (M.D. Ala. Mar. 5, 2012)(quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980))(internal quotations omitted).

---

[5]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc).

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id*. (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985))(internal quotations omitted).

"An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)(citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  To establish prejudice under the second prong of *Strickland*, Smith "must show that there is a reasonable probability that, but for counsel's errors, he would ***not*** have pleaded guilty and would have insisted on going to trial."  *Caffey*, 2012 WL 960912, at *4 (quoting *Hill*, 474 U.S. at 59)(emphasis added, internal quotations omitted).

Because the court finds Smith has failed to establish deficient performance, the court pretermits any discussion of whether he can also show prejudice.

Smith contends that his counsel was ineffective based on (1) counsel's failure to accept Smith's evidence of a paper trail leading up to the transaction that forms the basis of

Count One, (doc. 1 at 3), and (2) counsel's failure to investigate Smith's claims that he made

no false statements as alleged in Count Two, (*id*. at 4-5).  In response to Smith's Motion to

Vacate, the Government has submitted the Affidavit of Smith's counsel Robert Tuten, in

which Tuten testifies:

> 9.  Regarding the wire fraud count, [t]his charge arose when Smith sold a cubic zirconia over the internet having held the same to be a real diamond. In his motion, Smith seems to allege that the victim, Mr. [Morstad,] defrauded him by switching the real diamond for a fake.   [T]his is absolutely preposterous.  Counsel conducted an extensive investigation of this matter which included the assistance of a private investigator.  Counsel found that Smith had taken a cubic zirconia to various jewelers around Huntsville, Alabama in an effort to have the object appraised.  Each jeweler told Smith the object was a cubic zirconia with a value of about $10.00 and consistently refused to give Smith an appraisal.  Consequently Smith fabricated or forged an appraisal which he gave to [Morstad] as a real appraisal for the object [Morstad] purchased.  Counsel was not able to verify the document and learned that the appraisal was also a fake.  Under oath in this matter Smith alleged in open court that he could distinguish between a genuine diamond and a cubic zirconia with his naked eye.  This contention is absolutely unbelievable. . . . There was no "clear paper trail" suggesting the object Smith sold and [Morstad] received was a genuine diamond.

> 10.   Regarding Count 2 – False or Fraudulent Statement or Representation, Smith contends that he is a "Service Disabled Veteran".  The basis of the charge was that Smith held himself out to be a combat disabled veteran in order to receive various specifically set aside Government contracts.  Counsel conducted an extensive investigation of this case including the use of a private investigator.  Counsel found that Smith had never served in combat, [and he] had applied for disability but had been denied.  Smith was not a combat disabled nor a service disabled veteran.  Smith had actually been discharged from the military in lieu of prosecution for being AWOL.

> . . .

> 12.  Counsel's assessment that Smith would most likely lose [at] trial and be convicted as charged was precisely correct.  Furthermore, by pleading

guilty Smith obtained the benefits of a favorable plea agreement and a US
Sentencing Guideline reduction for acceptance of responsibility. . . .

(Doc. 4-1 ¶¶ 9-10, 12.)  The court finds counsel's testimony to be credible and consistent
with the known facts of this case.

"An attorney's responsibility is to investigate and to evaluate his client's options in the
course of the subject legal proceedings and then to advise the client as to the merits of each."
*Stano v. Dugger*, 921 F.2d 1125, 1151 (11th Cir. 1991).

. . . [C]ounsel owes a lesser duty to a client who pleads guilty than to one who
decides to go to trial, and in the former case counsel need only provide his
client with an understanding of the law in relation to the facts, so that the
accused may make an informed and conscious choice between accepting the
prosecution's offer and going to trial.  To impart such an understanding to the
accused, counsel must, after making an independent examination of the facts,
circumstances, pleadings and laws involved, offer his informed opinion as to
the best course to be followed in protecting the interests of his client.  The
interest underlying [a defendant's] claim is his interest in having, before he
judges the desirability of the plea bargain, a general knowledge of the possible
legal consequences of facing trial.

*Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984)(internal citations omitted).

The court finds that Smith's counsel properly investigated the claims against him and
that he properly advised Smith of the legal consequences of going to trial.  Counsel
investigated the factual bases of the charges and appropriately advised Smith.  The court
finds counsel's performance was not ineffective or deficient.  Also, the court finds Smith's
statements to the contrary are not credible and provide no reason to set aside his conviction
and sentence.

17

Smith's Motion to Vacate his conviction and sentence as to Counts One and Two of the Indictment is due to be denied.

## CONCLUSION

Based on the foregoing, petitioner Skyler Tarquin Smith's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (doc. 1), is due to be granted in part and denied in part. An Order granting Smith's Motion and vacating his convictions on Counts Three and Seven and denying his Motion as to the remaining Counts will be entered contemporaneously with this Memorandum Opinion.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Proceedings, provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). And, the "certificate of appealability may issue . . . *only* if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)(emphasis added). To make a substantial showing of the denial of a constitutional right, the applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)(citations and internal quotations omitted).

As to his conviction and sentence on his guilty plea to Counts One, Two, and Four through Six of the Indictment, Smith has not demonstrated that he was denied any constitutional right or that the issues he raises are reasonably debatable and/or deserve encouragement to proceed further.  Therefore, issuance of a certificate of appealability is not warranted in this case.

**DONE** this 30th day of March, 2015.

*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE